UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **RICHARD B. RISK, JR., et al.,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| v. ) | Case No. 04-CV-0333-CVE-FHM |
| ) | |
| **ALLSTATE LIFE INSURANCE** ) | |
| **COMPANY, et al.,** ) | |
| ) | |
| **Defendants.** ) | |

## OPINION AND ORDER

Now before the Court for consideration is Defendants' Joint Motion to Dismiss Plaintiffs' Complaint and Brief in Support (Dkt. # 11). Plaintiffs have filed a complaint alleging wrongful discharge, violations of Oklahoma insurance law, and state and federal antitrust claims. Defendants filed a motion to dismiss asserting that plaintiffs have failed to state any claim upon which relief can be granted.

### I.

Plaintiff Richard B. Risk is the owner of a limited liability company called Structured Settlement Services ("SSS"). SSS was hired by Allstate Life Insurance Company ("Allstate") as an agent authorized to conduct structured settlement negotiations to settle liability claims on behalf of Allstate. Risk did not buy or sell products directly, but he acted as agent for Allstate and received a commission for providing litigants a range of services to help them settle cases. In these arrangements, Allstate was the seller and the litigants were the buyers. Risk simply helped broker deals between the buyer and seller, and in exchange he received a fee for his services. Risk sent a letter to the John Ashcroft, then Attorney General for the United States of America, advising the

Department of Justice that Allstate was engaged in violations of federal law.[1]  Allstate learned of the letter and, on February 16, 2002, terminated Risk's contract.  Risk claims that this letter was the sole reason he was released as a settlement agent by Allstate.  As a consequence, Risk can no longer serve as an authorized agent for Allstate or offer Allstate products to potential clients.

Plaintiff has brought four claims against defendants.  Plaintiff alleges that: 1) he was wrongfully discharged in violation of the public policy of the United States; 2) defendants discriminated against plaintiff in violation of Okla. Stat. tit. 36, § 1220 by not allowing him to offer a full range of settlement services; 3) Allstate restrained trade in violation of the Sherman Act and the Clayton Act by limiting the structured settlement plans plaintiff could offer prospective clients; and 4) the same acts also violate Oklahoma antitrust law.  Defendants seek dismissal of all of plaintiff's claims.

## II.

When reviewing a motion to dismiss under Rule 12(b)(6), the court must construe the allegations of the complaint as true and view the allegations in the light most favorable to the nonmoving party.  Moffett v. Halliburton Energy Services, Inc., 291 F.3d 1227, 1231 (10th Cir. 2002).  A Rule 12(b)(6) motion "should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Sutton v. Utah State School for the Deaf & Blind, 173 F.3d 1226, 1236 (10th Cir. 1999).

---

[1] In his response to defendants' motion to dismiss (Dkt. # 12), plaintiff clarifies this allegation by stating that his letter informed the Department of Justice that it could avoid procedural problems when settling claims under the Federal Tort Claims Act by using a qualified settlement fund.  Plaintiff claims that Allstate concluded this would harm its business and fired him on that basis.

### III.

Defendants argue that plaintiff may not bring a claim for wrongful discharge under <u>Burk v. K-Mart Corporation</u>, 770 P.2d 24 (Okla. 1989), alleging that defendants violated the public policy of the United States. Plaintiff responds by claiming that he was an at-will employee whose termination violated federal regulations. In his response brief, plaintiff clearly relies on <u>Burk</u>. Dkt. # 12 at 3-4. However, he offers no arguments as to what federal law constitutes the source of public policy for a <u>Burk</u> wrongful discharge claim. Even assuming that plaintiff was an at-will employee[2] and that <u>Burk</u> applies, he has not stated a claim for wrongful discharge in violation of <u>Oklahoma's</u> public policy.

In <u>Burk</u>, the Oklahoma Supreme Court crafted a narrow exception to the at-will employment rule, holding that an employee may not be discharged "for refusing to act in violation of an established and well-defined public policy or for performing an act consistent with a clear and compelling public policy." <u>Barker v. State Ins. Fund</u>, 40 P.3d 463 (Okla. 2001). The Oklahoma Supreme Court has been clear that the first step in analyzing a claim for wrongful discharge is to "identify the offending employer's conduct in terms of its conformity to, or discord with, *Oklahoma's public policy*." <u>Clinton v. State of Oklahoma ex rel. Logan County Election Bd.</u>, 29 P.3d 543, 547 (Okla. 2001) (emphasis in original). "The Oklahoma Legislature, not [the Oklahoma Supreme Court] or Congress, is primarily vested with the responsibility to declare the public policy of this state." <u>Griffin v. Mullinix</u>, 947 P.2d 177, 179 (Okla. 1997). The Tenth Circuit has interpreted <u>Burk</u> to require the plaintiff to plead that a particular <u>Oklahoma</u> constitutional, statutory

---

[2] The burden is on plaintiff to plead that he was an at-will employee at the time of his discharge, as this is an essential element of a <u>Burk</u> claim. <u>McCrady v. Oklahoma Dept. of Public Safety</u>, 122 P.3d 473, 475 (Okla. 2005).

3

or decisional law was violated. McKenzie v. Renberg's Inc., 94 F.3d 1478, 1487-88 (10th Cir. 1996) (plaintiff's claim that employer's actions violated the federal Fair Labor Standards Act did not state a claim under Burk and must be dismissed for failing to direct the court to a specific Oklahoma public policy); see also Wilburn v. Mid South Health Development, Inc., 343 F.3d 1274, 1280 n.7 (10th Cir. 2003); Shaw v. AAA Engineering & Drafting, Inc., 213 F.3d 519, 536 (10th Cir. 2000).

Plaintiff's complaint does not contain any allegations that defendants' conduct violated Oklahoma public policy. It is not enough for Risk to allege that he was fired in violation of "public policy," because an essential part of any Burk tort is that the employer violated clearly established Oklahoma public policy. Plaintiff's response brief does not clarify the source of the public policy that forms the basis for his wrongful discharge claim. Reading the complaint in a light most favorable to plaintiff, he may be alleging that he was fired as a whistleblower; however, in order to state a claim for wrongful discharge as a whistleblower, he must state that he was fired for complaining about violations of Oklahoma law. See Barker, 40 P.3d at 469; Hayes v. Eateries, Inc., 905 P.2d 778 (Okla. 1995); Crain v. Nat. American Ins. Co., 52 P.3d 1035, 1039-40 (Okla. Civ. App. 2002). Plaintiff states that he was fired for reporting violations of IRS and federal treasury regulations to the United States Attorney General. This does not implicate his employer in any wrongdoing under Oklahoma law and, therefore, plaintiff has failed to state a Burk claim upon which relief can be granted. Count 1 of plaintiff's complaint must be dismissed.

## IV.

Defendants ask the Court to dismiss plaintiff's claim for violation of Oklahoma insurance law, specifically Okla. Stat. tit. 36, § 1220, because the legislature did not intend to create a private

right of action under this section. Section 1220 states that "[n]o insurance company, including any subsidiary of any such company, may offer any insurance program in this state to exclusive agents without offering the same insurance program through all of its other authorized agents and brokers authorized for similar types of insurance coverage."

On its face, the statute does not create a private right of action. Section 1220 is part of the Unfair Practices and Frauds Act, Okla. Stat. tit. 36, § 1201 et seq., which is part of the Oklahoma Insurance Code, Okla. Stat. tit. 36, § 101 et seq. The Oklahoma Supreme Court has stated that other sections of the Oklahoma Insurance Code do not create a private right of action. See McWhirter v. Fire Ins. Exchange, Inc., 878 P.2d 1056, 1057-58 (Okla. 1994) (Claims Resolution Act, Okla. Stat. tit. 36, § 1254(5), calls for purely administrative enforcement and does not create a private right of action); Walker v. Chouteau Lime Co., Inc., 849 P.2d 1085, 1086-87 (Okla. 1993) (Unfair Claim Settlement Practices Act, Okla. Stat. tit. 36, § 1221-1228, neither expressly nor impliedly creates a private right of action). The Unfair Practices and Frauds Act, like the Oklahoma Insurance Code in general, is enforced administratively by the Insurance Commissioner and makes no mention of enforcement by individuals through civil lawsuits.. Okla. Stat. tit. 36, § 1205. The Court can not find any indication in section 1220 or the common law interpreting the Oklahoma Insurance Code that the statute expressly creates a private right of action.

Oklahoma has adopted a three-part test to determine if a statute impliedly creates a private right of action. In Holbert v. Echeverria, 744 P.2d 960 (Okla. 1987), the Oklahoma Supreme Court stated that a plaintiff must show that:

(1) the plaintiff is one of the class for whose *especial* benefit the statute was enacted;

(2) some indication of legislative intent, explicit or implicit, suggests that [the legislature] wanted to create a private remedy and not to deny one; [and]

> (3) implying a remedy for the plaintiff would be consistent with the underlying purposes of the legislative scheme.

Id. at 963.  When a statute grants enforcement authority to an administrative agency, this implies that the legislature did not intend to provide a private right of action.  See Schmeling v. NORDAM, 97 F.3d 1336, 1344 (10th Cir. 1996); Nichols Hills Physical Therapy v. Guthrie, 900 P.2d 1024, 1026 (Okla. Civ. App. 1995).  In terms of statutory construction, the inclusion of administrative enforcement impliedly excludes a private right of action.  Holbert, 744 P.2d at 965.  In this case, plaintiff has not shown that he has a right to bring an action under section 1220.

Putting aside the first part of the Holbert test, there is no indication that the legislature intended to allow private litigants to bring an action under section 1220.  The Unfair Practices and Frauds Act clearly sets out the procedures for administrative enforcement and judicial review, showing that the legislature knew how to establish a private right of action if had any intention to do so.  The Insurance Commissioner is vested with the authority to charge any person with a violation of the act, hold hearings, and enter a cease and desist order to enforce the act.  Okla. Stat. tit. 36, § 1206.  Any person who disagrees with an order of the Insurance Commissioner may ask for judicial review of that decision within 30 days of service of the order.  Okla. Stat. tit. 36, § 1208. The legislature provided a means to enforce the statute and the clear indication is that the legislature did not intend to create a private right of action.

Plaintiff's argument that the insurance agents were intended to receive certain benefits under section 1220 does not mean that the legislature also intended to allow every aggrieved insurance agent to pursue a civil lawsuit to enforce his rights.  Plaintiff offers no specific arguments that the

6

legislature intended to allow individual insurance agents to file civil claims under this section.[3]
Even assuming that plaintiff is a member of a class that has a right to seek redress under the statute, plaintiff has failed to present persuasive arguments under the second and third prongs of Holbert. There is a complete absence of legislative intent to create a private remedy, and a private right of action would not be consistent with the overall legislative scheme. The statute specifically conferred authority on the Insurance Commissioner to enforce the statute, which is clear evidence that the legislature meant for administrative, not judicial, enforcement of the statute. See Holbert, 744 P.2d at 965. Private lawsuits would only interfere with enforcement of section 1220. The Court finds that plaintiff may not pursue a claim under Okla. Stat. tit. 36, § 1220, as there is no express or implied private right of action. Count two of plaintiff's complaint must be dismissed.

**V.**

Plaintiff has alleged that defendants violated his rights under the Sherman Antitrust Act, 15 U.S.C. §§ 1, 2 and 7 and under Okla. Stat. tit. § 79, 201 et seq.[4] The Oklahoma antitrust statutes are to be "interpreted in a manner consistent with Federal Antitrust Law . . . and the case law applicable thereto," so the Court will consider plaintiff's state and federal antitrust claims together. Okla. Stat.

---

[3] Recent precedent of the United States Supreme Court unequivocally states that the key inquiry when determining whether a statute implies a private right of action is legislative intent. See Alexander v. Sandoval, 532 U.S. 275, 286-87 (2001) ("The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy."); Touche Ross & Co. v. Redington, 442 U.S. 560, 575 (1979) ("The central inquiry remains whether Congress intended to create, either expressly or by implication, a private cause of action."). In Holbert, the Oklahoma Supreme Court cited this reasoning as persuasive when considering whether a statute contains an implied private right of action.

[4] Plaintiff had previously asserted antitrust claims under the Clayton Act, but in his response to defendants' motion to dismiss, he abandoned those claims.

tit. 79, § 212; Beville v. Curry, 39 P.3d 754 (Okla. 2001); Major v. Microsoft Corp., 60 P.3d 511 (Okla. Civ. App. 2002).  Allstate argues that plaintiff lacks standing to bring an antitrust claim because he has not suffered a direct injury as contemplated under section 4 of the Clayton Act. Although plaintiff has abandoned his antitrust claims under the Clayton Act, the Clayton Act provides the standing requirement for claims under the Sherman Antitrust Act as well.  See 15 U.S.C. §§ 12, 15.

In order to bring a private antitrust claim, plaintiff must meet the requirements for standing found in 15 U.S.C. § 15, which provides that "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws" may bring a civil claim.  The Tenth Circuit applies a two-part test to determine if an antitrust plaintiff has standing: (1) the plaintiff must allege that he has suffered an antitrust injury as defined by the Sherman Act; and (2) the plaintiff must show that the antitrust injury was a direct result of the defendant's violation of antitrust law. City of Chanute v. Williams Natural Gas Co., 955 F.2d 641, 652 (10th Cir. 1992); Farnell v. Albuquerque Publ'g Co., 589 F.2d 497 (10th Cir. 1978).  The Tenth Circuit has provided factors to help guide courts when applying the two-part standing test, which include: "(1) the causal connection between the alleged antitrust violation and the harm; (2) improper motive or intent of defendants; (3) whether the claimed injury is one sought to be redressed by antitrust damages; (4) the directness between the injury and the market restraint resulting from the alleged violation; (5) the speculative nature of the damages claimed; and (6) the risk of duplicative recoveries or complex damage apportionment."  Sports Racing Servs., Inc. v. Sports Car Club of America, Inc., 131 F.3d 874, 883 (10th Cir. 1997) (citing City of Chanute, 955 F.2d at 652 n.14).

The Court initially has some concerns based on plaintiff's allegations that he was an at-will employee wrongfully discharged under Oklahoma law. Generally, an employee does not have standing to bring an antitrust claim for acts arising out of his employment. Sharp v. United Airlines, Inc., 967 F.2d 404, 408 (10th Cir. 1992) ("we perceive no limitation in the clear and well-reasoned basis for the broad principle expressed in those cases, that employees simply cannot establish an antitrust injury when they lose their employment as a result of some allegedly anticompetitive activity directed at or involving their employer"); Curtis v. Campbell-Taggart, Inc., 687 F.2d 336, 337 (10th Cir. 1982) ("employees are not permitted to recover for anti-trust violations committed against their employers"); Comet Mechanical Contractors, Inc. v. E. A. Cowen, 609 F.2d 404, 406 (10th Cir. 1980) ("Antitrust violations admittedly create foreseeable ripples of injury to individual stockholders, consumers and employees, but the law has not allowed all of these standing to sue for treble damages."). Read broadly, plaintiff's complaint contains some allegations that he was engaged in commercial activity in conjunction with Allstate, and Allstate disputes the allegation that plaintiff was ever an at-will employee, so the Court will not dismiss plaintiff's claims on this basis.

Allstate claims that plaintiff is not a buyer or seller of structured settlement programs, merely a broker, and his incidental economic injury does not provide a basis for antitrust standing. Relying on Comet, Allstate claims that generally only buyers and sellers have standing to bring an antitrust claim. 609 F.2d at 406. Plaintiff argues that courts have recognized an exception to this general rule because Allstate has created a tying arrangement and this suffices to allege an antitrust injury.[5] "A

---

[5]  Plaintiff makes a general argument that he has suffered an antitrust injury under Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., 429 U.S. 477 (1977), which requires the plaintiff to prove that an antitrust injury flows from the defendant's unlawful conduct and that plaintiff's injury "reflect[s] the anticompetitive effect either of the violation or of anticompetitive acts made possible by the violation." Id. at 489. However, plaintiff specifically bases his

9

tying arrangement is 'an arrangement by a party to sell one product but only on the condition that the buyer also purchases a different (or tied) product, or at least agrees that he will not purchase that product from any other supplier.'" Eastman Kodak Co. v. Image Technical Servs., Inc., 504 U.S. 451, 461-62 (1992) (quoting Northern Pacific R. Co. v. United States, 356 U.S. 1, 5-6 (1958)). Not every type of tying arrangement constitutes an antitrust violation. If "each of the products may be purchased separately in a competitive market, one seller's decision to sell the two in a single package imposes no unreasonable restraint on either market, particularly if competing suppliers are free to sell either the entire package or its several parts." Jefferson Parish Hosp. Dist. No. 2 v. Hyde, 466 U.S. 11-12 (1984). The Tenth Circuit has limited standing in tying cases to "the purchasers who are forced to buy the tied product to obtain the tying product (the prototypical tying plaintiff), and the competitor who is restrained from entering the market for the tied product." Sports Racing Servs., 131 F.3d at 887. The plaintiff must also point to a specific tied product that must be purchased with the tying product. Fox Motors, Inc. v. Mazda Distributors (Gulf), Inc., 806 F.2d 953, 957 (10th Cir. 1986); Multistate Legal Studies, Inc. v. Harcourt Brace Jovanovich Legal & Professional Publications, Inc., 63 F.3d 1540, 1547 (10th Cir. 1995).

Plaintiff is not a buyer of any structured settlement programs and, thus, does not qualify for standing on the first basis discussed in Sports Racing Servs.: plaintiff merely receives a commission from offering Allstate structured settlement programs to prospective buyers. Plaintiff is not a competitor of Allstate in the marketplace because plaintiff does not sell his own products; instead he acts as a middleman who provides a variety of structured settlement services through sellers with

---

antitrust injury and defendants' alleged unlawful conduct on the presence of an illegal tie-in, so there is no need to consider this argument separately.

whom he affiliates. It is unclear how Allstate could have engaged in an illegal tying arrangement, because plaintiff does not allege that Allstate required to him to buy a tied product to obtain a tying product, or that he was restrained from offering services or products similar to Allstate's in the same marketplace. The clearest argument plaintiff offers is that Allstate allows only Allstate approved brokers to sell Allstate structured settlement products. This is not the type of arrangement contemplated by the Supreme Court or the Tenth Circuit as a tying arrangement, because plaintiff is trying to join a service with a product to create a tie-in. The case law is clear that two distinct products must be joined together, and the eventual buyer must be required to purchase both products. See Mountain View Pharmacy v. Abbott Laboratories, 630 F.2d 1383, 1388 (10th Cir. 1980) (plaintiff's complaint must alert the defendant to two specific products that have allegedly been tied together in violation of antitrust laws). Plaintiff has not pled that Allstate participated in an illegal tying arrangement in violation of antitrust law; thus, he lacks standing on that basis.

Plaintiff also relies on Illinois Brick Co. v. Illinois, 431 U.S. 720 (1977), to claim that he has standing even though he is alleging only an indirect antitrust injury. In Illinois Brick, the Supreme Court limited standing, in antitrust cases involving alleged overcharges that have been passed on down the chain of commerce, to direct purchasers only. Id. at 735. The Supreme Court rejected an exception to this rule for middlemen who resell goods, because it would substantially erode application of the general rule. Id. at 744. The only exception recognized to the direct purchaser rule is for fixed quantity, preexisting cost-plus contracts. Id. at 736. The direct purchaser rule "eliminate[s] the complications of apportioning overcharges between direct and indirect purchasers." Kansas v. UtiliCorp United, Inc., 497 U.S. 199, 208 (1990). It is unclear how plaintiff intends this exception to apply, because he has offered no evidence that he actually sells any product directly

to a consumer. Plaintiff simply brokers deals for other companies which actually sell structured settlement programs, so there is no way plaintiff could be assuming or passing on an overcharge for these products. Plaintiff's complaint contains no allegations related to passing on alleged overcharges to subsequent purchasers, nor has he stated an exception to the direct purchaser rule.

Courts have recognized a narrow exception to the direct purchaser rule when the end purchaser is owned or controlled by the seller. See Illinois Brick, 431 U.S. at 736 n.15; Howard Hess Dental Laboratories Inc. v. Dentsply, 424 F.3d 363, 372 (3d Cir. 2005). The Tenth Circuit restricts this exception strictly to cases where the direct purchaser is barred from pursuing a claim against the seller. Sports Racing Servs., 131 F.3d at 889. Even assuming this case involved potential overcharges passed on to subsequent purchasers, plaintiff does not allege that the eventual purchasers of structured settlement services are barred from bringing their own claims directly. Plaintiff has not stated an exception to Illinois Brick that would allow him to proceed with his antitrust claims.

In summary, plaintiff is not a buyer or seller who has suffered a direct antitrust injury. He is merely an agent whose contract with Allstate was terminated for alleged acts of whisteblowing. This is not sufficient to allege an antitrust injury; plaintiff has merely alleged that he suffered personal economic harm when Allstate terminated his contract to act as its authorized agent. Simply because plaintiff can no longer sell Allstate structured settlement products does not mean that Allstate has engaged in an illegal restraint of trade under federal antitrust law. Counts three and four of plaintiff's complaint do not state a claim upon which relief can be granted and must be dismissed.

**IT IS THEREFORE ORDERED** that Defendants' Joint Motion to Dismiss Plaintiffs' Complaint and Brief in Support (Dkt. # 11) is **granted**, and plaintiff's complaint (Dkt. # 1) is **dismissed**.  This is a final order termininating this action.

**DATED** this 17th day of July, 2006.

*/s/ Claire V. Eagan*
CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT